Case 1:23-cr-20124-CMA Document 1 Entered on FLSD Docket 03/23/2023 Page 1 of 12

FILED by **MM** D.C.

Mar 22, 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **23-20124-CR-ALTONAGA/DAMIAN**

18 U.S.C. § 371
42 U.S.C. § 1320a-7b
18 U.S.C. § 1519
18 U.S.C. § 2
18 U.S.C. § 982(a)(7)

UNITED STATES OF AMERICA

vs.

NELLY ANDERSON,

        Defendant.
_____/

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times material to this Indictment:

### The Medicare Program

1. The Medicare Program ("Medicare") was a federally funded program that provided free and below-cost health care benefits to individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare & Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3. Medicare covered different types of benefits and was separated into different program "parts." Medicare "Part A" covered, among others, certain eligible home health care costs for medical services provided by a home health agency ("HHA"), also referred to as a "provider," to persons who already qualified for Medicare and who additionally required home health services because of an illness or disability that caused them to be homebound.

4. Medicare "providers" included HHAs, physicians, and other health care providers who provided items services to beneficiaries. To bill Medicare, a provider was required to submit a Medicare Enrollment Application Form ("Provider Enrollment Application") to Medicare. The Provider Enrollment Application contained certifications that the provider was required to make before the provider could enroll with Medicare. Specifically, the Provider Enrollment Application required the provider to certify, among other things, that the provider would abide by the Medicare laws, regulations, and program instructions, including the Federal Anti-Kickback Statute, and that the provider would not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare.

5. A Medicare "provider number" was assigned to a provider upon approval of the provider's Medicare Enrollment Application. A health care provider that received a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries.

6. A Medicare claim was required to contain certain important information, including: (a) the beneficiary's name and Health Insurance Claim Number ("HICN"); (b) a description of the health care benefit, item, or service that was provided or supplied to the beneficiary; (c) the billing codes for the benefit, item, or service; (d) the date upon which the benefit, item, or service was provided or supplied to the beneficiary; (e) the name of the referring physician or other health care

provider; and (f) the referring provider's unique identifying number, known either as the Unique Physician Identification Number ("UPIN") or National Provider Identifier ("NPI"). The claim form could be submitted in hard copy or electronically.

7.  When submitting claims to Medicare for reimbursement, providers were required to certify that: (1) the contents of the forms were true, correct, and complete; (2) the forms were prepared in compliance with the laws and regulations governing Medicare; and (3) the services that were purportedly provided, as set forth in the claims, were medically reasonable and necessary, provided as represented, and not procured through the payment of illegal kickbacks and bribes.

8.  Medicare claims were required to be properly documented in accordance with Medicare rules and regulations. Medicare would not reimburse providers for claims that were procured through the payment of kickbacks and bribes.

### Medicare Coverage for Home Health Services

9.  Medicare only covered home health services, if, on the claimed dates of service:

    a.  the Medicare beneficiary was under the care of a doctor and receiving services under a plan of care established and reviewed regularly by a doctor;

    b.  the Medicare beneficiary needed, and a doctor certified that the beneficiary needed, one or more of the following: (i) intermittent skilled nursing care, (ii) physical therapy, (iii) speech-language pathology services, or (iv) continued occupational therapy;

    c.  the HHA must have been approved by Medicare (Medicare-certified); and

    d.  the Medicare beneficiary was homebound, and a doctor certified that the Medicare beneficiary was homebound.

**The Defendants, Related Entities, and Relevant Persons**

10. Dial 4 Care, Inc. ("DIAL 4 CARE") was a corporation formed under the laws of Florida, with a principal place of business in Miami-Dade County, Florida. DIAL 4 CARE held accounts at Bank A ending in x8826 ("Dial 4 Payroll Account") and ending in x2866 ("Dial 4 Care Operating Account").

11. Defendant **NELLY ANDERSON** was a resident of Miami-Dade County, Florida. **ANDERSON** was an owner and corporate officer of DIAL 4 CARE and signatory on the Dial 4 Care Payroll Account and Dial 4 Care Operating Account.

12. Individual 1 was a resident of Miami-Dade County, Florida.

13. Individual 2 was a resident of Miami Dade County, Florida.

14. Individual 3 was a resident of Miami Dade County, Florida, and was the president and an owner of DIAL 4 CARE.

## COUNT 1
### Conspiracy to Defraud the United States and Pay Health Care Kickbacks
### (18 U.S.C. § 371)

1. Paragraphs 1 through 14 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around January 2017, and continuing through in or around December 2021, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**NELLY ANDERSON,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, including Individual 1, Individual 2, and Individual 3, to commit offenses against the United States, that is:

a. to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of HHS and CMS in their administration and oversight of Medicare; and

b. to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A), by knowingly and willfully offering and paying any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, including by check, to a person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part under a Federal health care program, that is, Medicare.

## Purpose of the Conspiracy

3. It was a purpose of the conspiracy for the defendant and her co-conspirators to unlawfully enrich themselves by, among other things: (a) offering and paying kickbacks and bribes to patient recruiters in exchange for recruiting and referring Medicare beneficiaries to DIAL 4 CARE for home health services; (b) submitting and causing the submission of claims to Medicare for home health services that DIAL 4 CARE purported to provide to these recruited and referred beneficiaries; (c) concealing and causing the concealment of the kickbacks and bribes; and (d) diverting proceeds of the conspiracy for her own personal use and benefit, the use and benefit of others, and to further the conspiracy.

## Manner and Means

The manner and means by which the defendant and her co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

4. **NELLY ANDERSON**, Individual 3, and others offered and paid illegal kickbacks and bribes to patient recruiters, including Individual 1 and Individual 2, in exchange for the

recruitment and referral of Medicare beneficiaries to DIAL 4 CARE for home health services.

5. **NELLY ANDERSON**, Individual 3, and others negotiated the kickback and bribe arrangements with patient recruiters, including with Individual 1 and Individual 2, and concealed and disguised the nature and source of these illegal kickbacks and bribes through sham contracts, sham invoices, and otherwise concealing such illegal kickbacks and bribes by describing them as payments for legitimate services.

6. **NELLY ANDERSON**, Individual 3, and others caused DIAL 4 CARE to submit claims to Medicare for home health services that were procured through the payment of illegal kickbacks and bribes.

7. Medicare paid **NELLY ANDERSON**, through DIAL 4 CARE, hundreds of thousands of dollars based on claims for home health services purportedly provided to Medicare beneficiaries recruited and referred by patient recruiters, including Individual 1 and Individual 2.

### Overt Acts

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one co-conspirator committed and caused to be committed, in the Southern District of Florida, at least one of the following overt acts, among others:

1. On or about August 23, 2019, **NELLY ANDERSON** caused the transfer of approximately $500, via check, from the Dial 4 Care Operating Account to Individual 1, which constituted a kickback payment for a Medicare beneficiary referral.

2. On or about October 29, 2021, **NELLY ANDERSON** caused the transfer of approximately $400, via check, from the Dial 4 Care Operating Account to Individual 1, which constituted a kickback payment for a Medicare beneficiary referral.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2–3
### Payment of Kickbacks in Connection with a Federal Health Care Program
### (42 U.S.C. § 1320a-7b(b)(2)(A))

1. Paragraphs 1 through 14 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2. On or about the dates enumerated below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**NELLY ANDERSON,**

did knowingly and willfully offer and pay any remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, including by check, as set forth below, to a person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare:

| Count | Approx. Date of Kickback | Approx. Amt. of Kickback | Description of Kickback |
|---|---|---|---|
| 2 | 8/23/2019 | $500 | Check #4170 issued from the Dial 4 Care Operating Account to Individual 1 |
| 3 | 10/29/2021 | $400 | Check #6530 issued from the Dial 4 Care Operating Account to Individual 1 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A) and Title 18, United States Code, Section 2.

## COUNTS 4–5
### Destruction, Alteration, and Falsification of Records in a Federal Investigation
### (18 U.S.C. § 1519)

1. Paragraphs 1 through 14 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

7

2. On or about November 21, 2021, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**NELLY ANDERSON,**

did knowingly alter, falsify, and make false entries in records provided to HHS and the United States Department of Justice ("DOJ") on or about December 10, 2021, in response to a grand jury subpoena, by the actions described below, with the intent to impede, obstruct, and influence the investigation and proper administration of any matter within the jurisdiction of any department and agency of the United States, that is, HHS and DOJ:

| Count | Description |
|---|---|
| 4 | **NELLY ANDERSON**, aided and abetted by Individual 1, altered, falsified and made false entries in a document entitled Invoice #63 by entering false and fraudulent details, hours, and amounts in the invoice so that it would match a corresponding check previously issued from DIAL 4 CARE to Individual 1 when **NELLY ANDERSON** well knew the amount in the original Invoice #63 did not match the corresponding check issued from DIAL 4 CARE to Individual 1. |
| 5 | **NELLY ANDERSON**, aided and abetted by Individual 1, altered, falsified and made false entries in a document entitled Invoice #10 by entering false and fraudulent details, hours, and amounts in the invoice so that it would match a corresponding check previously issued from DIAL 4 CARE to Individual 1 when **NELLY ANDERSON** well knew the amount in the original Invoice #10 did not match the corresponding check issued from DIAL 4 CARE to Individual 1. |

In violation of Title 18, United States Code, Sections 1519 and 2.

**FORFEITURE ALLEGATIONS**

1. The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which the defendant, **NELLY ANDERSON**, has an interest.

2.  Upon conviction of a violation of Title 18, United States Code, Section 371, or a violation of, or criminal conspiracy to commit a violation of, Title 42, United States Code, Section 1320a-7b, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

3.  If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

> a. cannot be located upon the exercise of due diligence;
>
> b. has been transferred or sold to, or deposited with, a third party;
>
> c. has been placed beyond the jurisdiction of the court;
>
> d. has been substantially diminished in value; or
>
> e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 982(a)(7) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

███████████████████████████

GRAND JURY FOREPERSON

*[signature]*

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

GLENN S. LEON, CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

*[signature]*

KATHERINE ROOKARD
PATRICK J. QUEENAN
TRIAL ATTORNEYS
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: _____

v.

NELLY ANDERSON,

**CERTIFICATE OF TRIAL ATTORNEY**

_____/
Defendant.

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of counts _____

**Court Division** (select one)
☒ Miami   ☐ Key West   ☐ FTP
☐ FTL      ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3. Interpreter: (Yes or No) No
   List language and/or dialect: _____

4. This case will take __2-3__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:
   (Check only one)         (Check only one)
   I    ☒ 0 to 5 days        ☐ Petty
   II   ☐ 6 to 10 days       ☐ Minor
   III  ☐ 11 to 20 days      ☐ Misdemeanor
   IV   ☐ 21 to 60 days      ☒ Felony
   V    ☐ 61 days and over

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No
15. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

By: _____
For PATRICK J. QUEENAN
DOJ Trial Attorney
Court ID No.   A5502715

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**      NELLY ANDERSON

**Case No:**

Count #:   1

Title 18, United States Code, Section 371

Conspiracy to Defraud the United States and Pay Health Care Kickbacks
* Max. Term of Imprisonment:    5 years
* Mandatory Min. Term of Imprisonment (if applicable):    N/A
* Max. Supervised Release:    3 years
* Max. Fine:    $250,000 or twice the gross gain or loss resulting from the offense

Counts #:   2 – 3

Title 42, United States Code, Section 1320a-7b(b)(2)(A)

Payment of Kickbacks in Connection with a Federal Health Care Program
* Max. Term of Imprisonment:    10 years as to each count
* Mandatory Min. Term of Imprisonment (if applicable):    N/A
* Max. Supervised Release:    3 years as to each count
* Max. Fine:    $250,000 or twice the gross gain or loss resulting from the offense

Counts #:   4 – 5

Title 18, United States Code, Section 1519

Destruction, Alteration, and Falsification of Records in a Federal Investigation
* Max. Term of Imprisonment:    20 years as to each count
* Mandatory Min. Term of Imprisonment (if applicable):    N/A
* Max. Supervised Release:    3 years as to each count
* Max. Fine:    $250,000 or twice the gross gain or loss resulting from the offense

*Refers only to possible term of incarceration, supervised release and fines.  It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.