UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-20124-CR-ALTONAGA

**UNITED STATES OF AMERICA**,

    Plaintiff,
v.

**NELLY ANDERSON**,

    Defendant.
_____/

**ORDER**

**THIS CAUSE** came before the Court on Defendant, Nelly Anderson's Motion for Judgment of Acquittal and Motion for New Trial [ECF No. 62], filed on September 27, 2023. The Government filed an Opposition [ECF No. 66], to which Defendant filed a Reply [ECF No. 70]. The Court has carefully reviewed the parties' written submissions, the record, and applicable law.

**I. BACKGROUND**

Following a jury trial and entry of the jury's Verdict [ECF No. 50], Defendant seeks a judgment of acquittal or a new trial as to Counts 1, 2, and 3[1] of the Indictment [ECF No. 1] under Federal Rules of Criminal Procedure 29(c) and 33. (*See generally* Mot.). Count 1 charged Defendant with conspiracy to defraud the United States and pay health care kickbacks, in violation of 18 U.S.C. section 371; Counts 2 and 3 charged Defendant with the payment of kickbacks in connection with a federal health care program, in violation of 42 U.S.C. section 1320a-7b(b)(2)(A). (*See* Indictment 1–7). Defendant challenges the sufficiency of the evidence presented, what she describes as the admission of Agent Ricardo Carcas's hearsay testimony, the Court's denial of her proposed jury instruction regarding civil violations of Medicare rules and

---

[1] The jury found Defendant not guilty of Counts 4 and 5. (*See* Verdict 2).

regulations, and what she asserts was the Government's shifting of the burden of proof in rebuttal closing argument. (*See generally* Mot.). The Court addresses these issues, and the relevant background facts as to each, in turn below.

## II. LEGAL STANDARDS

Defendant's requests — one for a judgment of acquittal and the other for a new trial — are governed by two different rules. In considering a request for judgment of acquittal under Federal Rule of Criminal Procedure 29(c), "a district court should apply the same standard used in reviewing the sufficiency of the evidence to sustain a conviction." *United States v. Ward*, 197 F.3d 1076, 1079 (11th Cir. 1999) (citation omitted). This means a "verdict of guilty must stand if there is substantial evidence to support it[.]" *United States v. Toler*, 144 F.3d 1423, 1428 (11th Cir. 1998) (alteration added; citation omitted). Any conflicts in the evidence are resolved in favor of the Government, and all inferences that tend to support the Government's case must be accepted. *See Ward*, 197 F.3d at 1079. The Court is to determine "whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Id.* (citations omitted); *see also United States v. Medina*, 485 F.3d 1291, 1296–97 (11th Cir. 2007).

Under Rule 33, a court may grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). "A motion for a new trial is addressed to the sound discretion of the trial court[.]" *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985) (alteration added).

## III. DISCUSSION

### A. Sufficiency of the Evidence

In support of her request for a judgment of acquittal or new trial, Defendant first argues the evidence was insufficient for the jury to convict her of the conspiracy charged in Count 1 and the substantive kickback charges of Counts 2 and 3 of the Indictment. Count 1 charged Defendant,

owner and corporate officer of Dial 4 Care, with conspiring "with others known and unknown to the Grand Jury, including" Denisse Hanley ("Individual 1"), Celeste Brens ("Individual 2"), Defendant's husband and the president of Dial 4 Care, David Anderson ("Anderson" or "Individual 3"), to defraud the United States by paying health care kickbacks. (*See* Indictment 4–5). The manner of accomplishing this included offering and paying illegal kickbacks and bribes to patient recruiters, including Individuals 1 and 2, in exchange for the recruitment and referral of Medicare beneficiaries to Dial 4 Care for home health services. (*See id.* 5–6). Count 1 alleged that Defendant, Anderson, and others concealed and disguised the nature and source of the illegal kickbacks and bribes through sham contracts and sham invoices, describing them as payments for legitimate services. (*See id.* 6). Counts 2 and 3 charged Defendant with acting knowingly and willfully in paying two different kickbacks to Hanley for the referrals of two Medicare beneficiaries, the first for $500 and the second for $400. (*See id.* 7).

According to Defendant, as to Count 1, the Government failed to prove a single, unified conspiracy among Defendant and the three named individuals; at best, she states the Government proved a smaller conspiracy between Defendant, Hanley, and Anderson, which did not include Brens. (*See* Mot. 5–10; Reply 1–4). Regarding Counts 2 and 3, Defendant asserts the Government failed to prove she acted knowingly and willfully. (*See* Mot. 10–12). Defendant fails to persuade she is entitled to a judgment of acquittal or a new trial as to any of the Counts based on the claimed insufficiency of the evidence.

In relation to Count 1, Stephen Quindoza testified that Medicare is a federal health care program; Dial 4 Care was owned by Defendant and Anderson; and Dial 4 Care billed and was paid by Medicare for claims related to Frank Mosher (substantive kickback charged in Count 2) and Barbara Paschal (substantive kickback charged in Count 3). (Sept. 11, 2023 Tr. [ECF No. 74]

23:9–11; 47:23–48:6; 36:3–37:13; 38:2–11). Quindoza testified Dial 4 Care was a Medicare provider, and Defendant was a "Delegated Official" for Medicare purposes. (*See id.* 31:4–6). As Delegated Official, Defendant certified she would not submit any claims based on the payment of kickbacks. (*See id.* 29:25–30:3).

The Government presented evidence of an agreement between the conspirators through the employment contracts between Dial 4 Care and two Dial 4 Care "marketers," Hanley and Brens. (*See id.* 91:14–22; 93:12–22). The employment contracts falsely represented that the marketers would be paid hourly (*see id.* 93:19–22); when Dial 4 Care invoices demonstrated the marketers were paid per patient, which constitutes an illegal kickback for a Medicare referral. Many of the invoices in evidence listed the names or initials of patients for whom the kickbacks were paid. (*See* Opp'n 3 (citing Exs. 408B–D)). The payments listed in the invoices were corroborated by banking records, including checks to Hanley and Brens. (*See id.*). Like the invoices, the kickback payments frequently listed the names or initials of patients on the memo lines of the checks. (*See* Sept. 12, 2023 Tr. [ECF No. 75] 7:6–8:25; 11:11–12:19).

Forensic accountant, Gabrielle Ball, performed an analysis isolating the kickback payments made to Brens and Hanley. From January to May 2017, Brens was paid $2,071.80 every two weeks. (*See* Ex. 301 [ECF No. 59-11] 6). Then, the check memo lines began to reference invoices instead of pay-periods. (*See* Sept. 13, 2023 Tr. [ECF No. 76] 169:2–170:7). The amounts also changed to round numbers, usually in increments divisible by $300 or $500. (*See id.* 170:18–171:3). Hanley's ledger is strikingly similar, with round numbers for almost every invoice. (*See id.* 171:4–7; Ex. 301 8–10).

Hanley testified, stating Defendant agreed to pay her kickbacks in exchange for Medicare patient referrals. She was paid between approximately $300 and $500 per Medicare patient she

4

referred to Dial 4 Care. (*See* Sept. 12, 2023 Tr. 23:21–25:4). Hanley also supplied text messages she exchanged with the Defendant, where the latter acknowledged reviewing the invoices and signing checks for them. (*See id.* 25:16–26:15, 27:22–44:20). Brens did not testify.

"For a defendant to be found guilty of a conspiracy, the government must prove beyond a reasonable doubt (1) that a conspiracy existed; (2) that the defendant knew of it; and (3) that the defendant, with knowledge, voluntarily joined it." *United States v. Vernon*, 723 F.3d 1234, 1273 (11th Cir. 2013) (quotation marks and citation omitted). Because the crime of conspiracy "focuses on agreements, not groups[,] [t]he Government need not prove with whom a defendant conspired, and failure to prove that a defendant conspired with every alleged co-conspirator is not fatal to the Government's case." *United States v. Smith*, 26 F.3d 739, 745 (7th Cir. 1994) (alterations added; citation omitted). Rather, "[t]he government need only prove that the defendant agreed with at least one of the persons named in the indictment that they or one of them would perform an unlawful act." *United States v. Kelly*, 892 F.2d 255, 259 (3d Cir. 1989) (alteration added); (*see also* Sept. 14, 2023 Tr. [ECF No. 77] 65:2–7 ("A conspiracy is an agreement by two or more people to commit an unlawful act . . . . The Government does not have to prove that all the people named in the indictment were members of the plan[.]" (alterations added))); *see also United States v. Medina*, No. 13-cr-272, 2015 WL 252422 (S.D.N.Y. Jan. 20, 2015) (collecting cases).

Defendant admits that "the evidence at trial, taken in the light most favorable to the government, established a smaller, uncoordinated conspiracy between [Defendant], Denisse Hanley, and David Anderson." (Mot. 5 (alteration added)). Indeed, the evidence presented proves such a conspiracy. This, by itself, was sufficient for the jury to convict Defendant of the conspiracy charged in Count 1 and compels denial of Defendant's request for acquittal or a new trial.

But even if the Government had to prove a conspiracy as to all the individuals named in the Indictment, it did so. "The very nature of conspiracy frequently requires that the existence of an agreement be proved by inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme." *United States v. Mateos*, 623 F.3d 1350, 1362 (11th Cir. 2010) (quoting *United States v. Molina*, 443 F.3d 824, 828 (11th Cir. 2006)). And "[b]ecause the crime of conspiracy is predominantly mental in composition, it is frequently necessary to resort to circumstantial evidence to prove its elements." *United States v. Toler*, 144 F.3d 1423, 1426 (11th Cir. 1998) (quotation marks and citations omitted). Certainly, the Government need not "demonstrate the existence of a formal agreement[] but may instead demonstrate by circumstantial evidence a meeting of the minds to commit an unlawful act." *Id.* (alteration added; quotation marks and citations omitted). Similarly, the Government need not prove a defendant knew all of the details of a conspiracy but need only prove the defendant knew the essential nature of the conspiracy. *See United States v. Miranda*, 425 F.3d 953, 959 (11th Cir. 2005) (quoting *United States v. Garcia*, 405 F.3d 1260, 1269–70 (11th Cir. 2005)).

Here, the Government showed the existence of the charged conspiracy between all the named individuals through circumstantial evidence of a meeting of the minds. Defendant voluntarily and repeatedly made payments of approximately $300 to $500 in exchange for each patient referred to Dial 4 Care. (*See* Opp'n 6). As the Government points out, "[e]vidence of the agreement between the [D]efendant and the two marketers[, including Brens,] starts with their employment contracts." (*Id.* 6–7 (alterations added)). The marketers were hired to recruit Medicare patients. (*See id.* 7). Indeed, the contracts stated the marketers, Hanley and Brens, would be paid hourly, but the paper trail left by Defendant and Anderson showed the marketers were

6

being paid on a per-patient referral basis, in violation of the Federal Anti-Kickback Statute. (*See id.*).

Regarding Count 2, Hanley testified she was paid a $500 kickback for the referral of Frank Mosher, and an invoice and a check written out to Hanley document that transaction. (*See* Sept. 12, 2023 Tr. 7:6–8:25). As to Count 3, Hanley testified she was paid a $400 kickback for the referral of patient Barbara Paschal; an invoice and a check stub document that transaction. (*See id.* 11:11–12:19). Hanley also produced text messages where Defendant acknowledged reviewing invoices and signing checks, showing Defendant's knowledge of the scheme. (*See id.* 25:16–26:15, 27:22–44:20). Medicare paid the claims for Mosher and Paschal. (*See* Sept. 11, 2023 Tr. 36:3–37:13, 38:2–11). The proof of these substantive counts further supports the underlying conspiracy charged in Count 1.

In sum, "the circumstances surrounding [Defendant's] presence at the scene of conspiratorial activity are so obvious that knowledge of its character can fairly be attributed to [her]." *Vernon*, 723 F.3d at 1273–74 (alterations added; quotation marks and citation omitted); *see, also, e.g.*, *United States v. Gonzalez*, 834 F.3d 1206, 1215 (11th Cir. 2016) (evidence sufficient to support jury's verdict of guilt as to charged conspiracy where the defendant, among other things, repeatedly "engaged in the practice of paying kickbacks between $150 and $250 in cash to the patients"). And when viewed in the light most favorable to the Government, there is sufficient evidence to sustain the convictions as to Counts 1, 2, and 3.

**B. Agent Carcas's Testimony**

According to Defendant, she is entitled to a new trial because during Special Agent Ricardo Carcas's testimony, she admitted in evidence Hanley's business cards, reflecting Anderson was engaged in the practice of health care law. (*See* Mot. 12). Yet, the Government attempted to

discredit that business card based on testimony from Agent Carcas that his review of a Florida Bar website revealed Anderson was not a healthcare attorney. (*See id.* 12–13). Defendant objected to the admissibility of the Florida Bar website printout, and the Court sustained the objection, but Defendant states, "at that point, the damage had been done." (*Id.* 13).

The Government explains it was the defense theory that Anderson, a supposed health care law attorney, and Jorge Hernando, an assisted living center mogul, set up an arrangement within Dial 4 Care to pay kickbacks, and that Defendant was unaware of the details of this arrangement. (*See* Opp'n 10). The Government first argues Anderson's Florida Bar profile was admissible because it fell outside the definition of hearsay; the purpose of asking the Agent about the Florida Bar profile was to show Anderson did not hold himself out as a healthcare attorney, thereby discrediting the defense theory. (*See id.* 9–10). According to the Government, when Defendant introduced the business card purporting to show Anderson practiced health care law, "[t]hat opened the door to the line of inquiry[.]" (*Id.* 10 (alterations added)). In any event, the Government argues the issue is moot because the Court sustained Defendant's objection to admission of the Florida Bar profile, and the jury was instructed regarding evidentiary objections. (*See id.*).

That Defendant introduced a business card as an exhibit is not an exception to the hearsay rule the Government can avail itself of; neither at trial nor in its briefing on this Motion does the Government supply any law supporting its position regarding its "opening of the door" argument. (Opp'n 9–10). The undersigned excluded introduction of the Florida Bar profile, finding the Government was indeed seeking to introduce it for the truth of the matter asserted. The jury is presumed to follow the Court's instructions. *See United States v. Simon*, 964 F.2d 1082, 1087 (11th Cir. 1992). Here, where the jury was instructed to consider only admitted evidence (*see*

Sept. 14, 2023 Tr. 58:10–11), the jury is presumed to not have considered the Florida Bar profile printout. Moreover, Agent Carcas's limited testimony regarding his review of a Florida Bar website (*see* Sept. 13, 2023 Tr. 125:14–25)[2] is not a sufficient basis to grant Defendant a new trial.

### C. Failure to Give Requested Jury Instruction

Defendant's next argument is that the Court's refusal to give a requested jury instruction regarding Medicare civil rules and regulations constitutes error so grave a new trial is warranted. (*See* Mot. 14–15). In particular, Defendant asked the Court to instruct the jury that violation of Medicare civil rules and regulations is not a crime. (*See id.* 14). Without the proposed instruction, which Defendant states other judges have given (*see id.* 15–16 & nn. 40–44 (citing cases)), Defendant has "grave concern that the jury returned a guilty verdict merely due to their belief that [Defendant]'s alleged violation of civil Medicare rules and regulations is sufficient to sustain a criminal conviction" (*id.* 15 (alteration added)). This argument fails to persuade.

As noted by the Government, every case Defendant cites in support of her requested instruction involved a health care fraud violation. (*See* Opp'n 11). And the requested instruction also contained reference to "ethical standards and standards of care for home health care provider services" (Mot. 14 (citation omitted)), matters not at issue in this case. Here, the only civil regulation at issue was Medicare's prohibition against violating a criminal statute. It was never argued that because Defendant violated a Medicare rule, she was guilty of Counts 1 to 3; rather,

---

[2] The following testimony was introduced without objection:

> Q. Special Agent Carcas, did you ever take any steps to determine whether or not Mr. Anderson practiced healthcare law?
>
> A. From – from the research that I did, I could not find that he was a healthcare attorney.

(Sept. 13, 2023 Tr. 125:14–17).

the case presented was that because Defendant violated the Anti-Kickback Statute, she violated a Medicare rule.

The Court agrees with the Government that the requested instruction would have been more confusing than helpful, and there was no error in denying Defendant's request that the jury be so instructed. *Cf. United States v. Orr*, 825 F.2d 1537, 1542 (11th Cir. 1987) ("We will reverse a trial judge's refusal of a requested instruction only if the rejected instruction was substantively correct; the actual charge to the jury did not substantially cover the proposed instruction[;] and the failure to give it substantially impaired the defendant's ability to present an effective defense." (alteration added; citation omitted)).

### D. Government's Closing Argument

Defendant's final argument in support for her request for a new trial is that the Government improperly shifted the burden of proof to the defense by arguing in its rebuttal close that Defendant chose not to call any witnesses because she knew what their testimony would be, particularly when the Government rendered two defense witnesses unavailable by indicating the first was a potential target of an investigation and by labeling the other a "criminal." (Mot. 16–19; Reply 6–7). Defendant now objects to a portion of the Government's rebuttal closing argument, where the prosecutor stated,

> So they come up here, and they say, Well, you didn't hear from this person, and you didn't hear from that person. Well, here's the deal, they don't have a burden, but when they say things like that, it's fair to point out that they have the ability to call any witness they want, and they didn't. They didn't because they know what those people would say.

(Sept. 14, 2023 Tr. 50:25; 51:1–5). Notably, Defendant did not make a contemporaneous objection at trial or ask that these statements be stricken. (*See id.*).

While it is improper for a prosecutor to shift the burden of proof to a defendant, *see United States v. Simon*, 964 F.2d 1082, 1086 (11th Cir. 1992), where a defense attorney argues the Government's failure to call a witness — as defense counsel did here — the Government is permitted to point out a defense's ability to subpoena witnesses, *see United States v. Hernandez*, 145 F.3d 1433, 1438–39 (11th Cir. 1998). Defense counsel asked the jury to question why it had not heard from certain non-witnesses, whom the Government describes as Defendant's co-conspirators. (*See* Opp'n 13). While prefacing the law that a defendant does not have a burden of proof, the Government in rebuttal argument pointed out a defendant's subpoena power and then argued a negative inference about the missing witnesses' testimony. (*See id.*); *see also United States v. Martinez*, 146 F. App'x 450, 454–59 (11th Cir. 2005) ("[T]he defense argued that the government had failed to produce certain evidence available to it, and the prosecutor's rebuttal . . . was that the defense could have presented the same evidence if it thought that it would be compelling . . . . [T]his was not an improper statement as the defense, while entitled to make its argument, invited the prosecutor's response." (alterations added; citation omitted)).

Even if the prosecutor's comment was improper, the Court does not find the trial's outcome would have been different if the remarks had not been made. *See United States v. Delgado*, 56 F.3d 1357, 1368 (11th Cir. 1995). They were isolated remarks, and there was sufficient evidence to find Defendant guilty of Counts 1 to 3.

### IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendant, Nelly Anderson's Motion for Judgment of Acquittal and Motion for New Trial **[ECF No. 62]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 28th day of November, 2023.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record